## DAVID BIGELOW v. JOHN KELLAR et al.

The drawer of a promissory note. who had resided in New Orleans, removed to Madisonville before the maturity of the note, leaving no office or place of business in New Orleans, though frequently in the city. To bind the endorser, demand should have been made of the drawer, either in person, or at the place of his domicil in Madisonville.

APPEAL from the Fifth District Court of New Orleans, *Buchanan*, J, *Race* and *Foster*, for plaintiff. *Hoffman* and *Ogden*, for defendants. The judgment of the court was pronounced by

SLIDELL, J. The defendant, *Kellar*, is sued as endorser of a note made by *Black*, dated at New Orleans, 15th August, 1848, and payable at twelve months after date. His defence is, that there was not a demand of payment of the maker.

It appears that *Black*, at the date of the note, resided in New Orleans, but in March, 1849, he gave up the house he rented there, and removed with his children and wife (or a person, at least, with whom he lived as such) to Madisonville, in the parish of St. Tammany. The circumstances of this change of residence were sufficiently strong to satisfy the district judge that *Black* could not be sued in New Orleans, and his plea of domicil was consequently sustained. The evidence shows that himself and family occupied the house at Madisonville, at the date of the maturity of the note, and for some months subsequent; and down to the trial of the cause, his domestic arrangements, in that particular, do not appear to have been changed.

It appears, however, that he was in the habit of frequently visiting New Orleans. He had kept a shoe shop in New Orleans, and retired from that business when he removed his family to Madisonville. But some mercantile affairs appear to have remained unsettled. The testimony as to the frequency of his

visits is somewhat indefinite; but it may be inferred on the whole that he came to New Orleans once or twice a week. He had given up the office or place of business which he occupied while dwelling in New Orleans; but was in the habit when he came to town, of resorting to the office of *Felch*, an intimate friend. He had no commercial books there, but would write letters there, read the newspapers, and make memoranda in a memorandum book which he carried about with him. His habit of resorting to the office of this friend seems to have been generally known, and the inquiries·there, by persons wishing to see him, were frequent. Three days before the note was protested, the notary's clerk went to *Felch's* office to inquire about *Black*, and was told that he resided in the parish of St. Tammany, and had no office in that building. It also is proved, that the plaintiff was in Madisonville in July or August, 1849, and was told by a person of whom he inquired that *Black* resided there.

We think it clear that the holder was bound to make a presentment, either to *Black* personally, or at his new domicil at Madisonville, unless he can be considered, under the evidence, as having a place of business at New Orleans. So that the case turns upon the question, whether *Felch's* office where the note was presented, at maturity, was *Black's* place of business, in such a sense as to authorize a presentment there. Upon this point, we think the case is with the defendant. *Black's* visits to New Orleans were occasional only. He had ceased to transact any regular business there. His presence at *Felch's* office to receive any demands made upon him, was uncertain, nor was any one left there in his absence to answer for him. His removal to Madisonville was brought to the holder's knowledge before maturity, and the answer made to his agent, the notary's clerk, was a timely warning not to treat *Felch's* office as his place of business.

It is therefore decreed, that the judgment be reversed, and that there be judgment as in case of non-suit; the plaintiff paying costs in both courts.